## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED STATES OF AMERICA

                Plaintiff,

v.                                      Case No. 12-CR-20272

                                      Honorable Denise Page Hood

FELICAR WILLIAMS (D-4),

                Defendant.

_____/

## ORDER DENYING DEFENDANT FELICAR WILLIAMS' MOTION FOR JUDGMENT OF ACQUITTAL AND MOTION FOR NEW TRIAL

This matter comes before the Court on Defendant Felicar Williams' Motion for Judgment of Acquittal **[Docket No. 385, filed October 13, 2014]** and Motion for New Trial **[Docket No. 388, filed October 15, 2014]**. The Government filed a Response to both Motions **[Docket No. 395, filed November 17, 2014]**.

## I.    BACKGROUND

Williams was indicted on April 26, 2012 and charged with violating 18 U.S.C. § 1349, Health Care Fraud Conspiracy, and 18 U.S.C. § 371, Conspiracy to Pay and Receive Health Care Kickbacks. Williams was indicted for her role in a multimillion dollar health care fraud scheme that involved approximately 30 companies in the Detroit area. Williams is believed to have billed Medicare for

home health care and psychotherapy services that were either not provided or not medically necessary.   Williams was also charged with paying kickbacks for Medicare information from Medicare beneficiaries whom Defendant used to defraud Medicare.  Subsequent superseding indictments did not change the nature of the charges against Williams.

The jury trial began in this matter on July 14, 2014.  On September 30, 2014, the jury rendered its verdict finding Williams guilty on one count of conspiracy to commit health care fraud (18 U.S.C. § 1349) and one count of conspiracy to pay health care kickbacks (18 U.S.C. § 371).  **[Docket No. 377, Verdict Form]**

## II.   ANALYSIS

### A.   Standards for Motions for Under Rules 29 and 33

#### 1.   Rule 29 Motion for Judgment of Acquittal

Williams requests a judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure based on insufficient evidence to support a conviction.  To support a motion for judgment of acquittal the court must consider, "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Caseer*, 399 F.3d 828, 839-40 (6th Cir. 2005); *Jackson v.  Virginia,* 443 U.S. 307, 319 (1979).  A defendant claiming insufficiency of the evidence bears a heavy burden.  *United States v.*

*Jackson*, 473 F.33d 660, 669 (6th Cir. 2007). The court is bound to make all reasonable inferences and credibility choices in support of the jury's verdict. *Id*. at 669-70. The question is merely one of legal sufficiency; the court does not substitute its judgment for that of the jury, independently weigh the evidence, or judge the credibility of trial witnesses. *United States v. Ramirez,* 635 F.3d 249, 255-56 (6th Cir. 2011). There is a strong presumption in favor of sustaining a jury conviction. *United States v. Peters,* 15 F.3d 540, 544 (6th Cir. 1994).

### 2.      Rule 33 Motion for a New Trial

Alternatively, Williams seeks a new trial under Rule 33 "in the interest of justice" for several reasons: the government failed to prove each element of every count beyond a reasonable doubt; Williams was unable to confront significant witnesses; and the government committed several acts of prosecutorial misconduct causing an unfair trial. The government responds that the evidence presented during the twelve-week trial was sufficient to support the verdict, the evidence was properly admitted, and there was no prosecutorial misconduct.

Rule 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When faced with a Rule 33 motion, unlike a motion for judgment of acquittal under Rule 29, the district court may weigh the evidence and assess the credibility of the witnesses—"[i]t has often been said that [the trial

3

judge] sits as a thirteenth juror" when considering a Rule 33 motion. *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998). A motion for new trial is premised on the argument that the jury's verdict was against the manifest weight of the evidence. *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). Such motions are generally granted only in the extraordinary circumstance where the evidence preponderates heavily against the verdict. *Id.* at 592-93. In general, motions for a new trial are disfavored and should be granted with caution. *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991). A district court's decision to admit or exclude evidence is reviewed for abuse of discretion and, even if an abuse is found, a new trial is not required unless the defendant's substantial rights were affected by the admission or exclusion of the evidence. *See, United States v. Bonds,* 12 F.3d 540, 554 (6th Cir. 1993); Fed. R. Crim. P. 52(a).

**B.    Arguments/Elements**

Williams makes several arguments to support her claim for judgment of acquittal under Rule 29 and for new trial under Rule 33. Some of the arguments overlap. Williams first claims that the jury's verdict is against the great weight of the evidence under Rule 29 or that the government failed to prove all of the elements of the offenses with which she is charged under Rule 33.

Relative to her motion for new trial under Rule 33, she also claims that the government engaged in prosecutorial misconduct by intimidation of defense

witnesses, and improper closing argument regarding admission of Fed. R. Evid. 404(b) evidence.  In addition, Williams claims the admission of Exhibit 127G, the Summary Chart of fraudulent claims, was improper because she was unable to confront (as a witness) the "biller" of the claims, who was not called as a witness.

Williams argues that the only evidence against her to support the charges of conspiracy to commit health care fraud and conspiracy to receive illegal kickbacks come from co-defendant Sachin Scharma, Barbara Humes and LaTonya Odom. These witnesses were all in some way involved in the scheme of fraud at the Haven Adult Care facility of which Scharma testified Williams was part owner or at least operator of the programs.

The elements of conspiracy to commit health care fraud are: 1) that two or more persons, in some way or manner, come to a mutual understanding to try to commit health care fraud; and 2) that the defendant knowingly and voluntarily joined in the conspiracy.  18 U.S.C. § 1349.

The elements of health care fraud are: 1) there was a scheme or artifice to defraud a health care benefit program in connection with the delivery of or payment for health care benefits, items, or services; 2) the defendant knowingly and willfully executed or attempted to execute this scheme or artifice to defraud; and 3) the defendant acted with intent to defraud.  18 U.S.C. § 1347.

The elements of conspiracy to pay and receive health care kickbacks are: 1) that the defendant knowingly and willfully offered or paid, or solicited or received money or other remuneration to or from another individual; 2) that the money or other remuneration was paid or received primarily in order to induce the person to do one of the following:  (a) to refer an individual to a person for the furnishing and or arranging for the furnishing of an item or service that could be paid for, in whole or in part by a federal health care program; or (b) to purchase, lease, order or arrange or recommend purchasing, leasing or ordering any good, facility, service or item that could be paid for, in whole or in part, by a federal health care program; and (c) that the patient's services were covered in whole or in part, by Medicare; and (4) Medicare is a Federal health care program.  18 U.S.C. § 371.

### C.      Conspiracy to Commit Health Care Fraud

The testimony at trial showed that Williams either owned of directed the operations at Haven and agreed with co-defendant Sachin Scharma and others to commit health care fraud by submitting false claims to Medicare. More specifically, Sharma, a cooperating co-defendant and leader of the conspiracy, testified that Williams ran the day to day operations at Haven and co-owned it with him.  He testified that no psychotherapy was given to patients at Haven, but that Haven received money from Medicare. Barbara Humes, a social worker employed by Sharma, also implicated in the conspiracy, corroborated that Williams ran the

day to day operations at Haven and that fraudulent progress notes and billing sheets were prepared at Williams' direction.  Humes testified that Williams directed how to support psychotherapy either individual or group on certain days, selected so that such therapy did not take place on consecutive days and could be billed to Medicare. Other witnesses supported the testimonies of Sharma and Humes, including the testimony of LaTonya Odom who was hired by Williams as a social worker but was not licensed as a social worker.

The testimony showed that Williams instructed employees at Haven to complete progress notes indicating that the employees provided psychotherapy to patients when the employees were either not qualified to deliver such services or the services provided were not psychotherapy.  Williams was then given the fraudulently prepared progress notes and billing sheets which she then provided to the biller who used them to fraudulently submit claims to Medicare.  This process included at least one instance when services were fraudulently provided to a person who was deceased. This testimony was supported by billing sheets and progress notes admitted into evidence and payment by Medicare. All this testimony and documentary evidence was apparently believed by the jury.

Williams claims she presented evidence contrary to the government's case, including evidence to show the government's witnesses were not credible. Williams argues there was no evidence, except the testimony of Sharma, that she

was an owner of Haven.  Williams claims the testimony of her mother, Carolyn Wright, and that of her brother, an attorney, refute Sharma's testimony that she was an owner of Haven. The testimonies of these witnesses was that they were involved in the renovation of the building in which Haven was housed.

Williams also argues that there is no documentary evidence to support her connection with any forms or the Medicare process; that her name is not on anything connected to the conspiracy to commit health care fraud.  Williams asserts that there is no evidence to connect her to the billing of Medicare claims. Although witnesses testified that Williams gave the biller the progress notes or billing sheets, no biller testified at trial. Williams claims that the evidence cannot connect her to fraudulent billing without the testimony of the biller. Williams asserts that anyone with the appropriate billing identifiers could fraudulently bill Medicare, including other doctors associated with Haven. Williams presents no legal support for the requirement that the biller be called as a witness.

Williams further claims that the elements of the offense of conspiracy to commit health care fraud cannot be met without the testimony of the biller. However, conspiracy may be shown by circumstantial evidence. *United States v. Avery*, 128 F.3d 966, 871 (6th Cir. 1997).  "The connection between the defendant and the conspiracy need only be slight …" *United States v. Walls*, 293 F 3d 959, 967 (6th Cir. 2002).

8

The government relies on circumstantial evidence: that Medicare paid on claims submitted by Haven; that Williams shut down Haven to patients on certain days and had employees come in to complete progress notes and billing sheets in the manner she specifically directed; that Medicare was billed based on the fraudulently prepared progress notes and billing sheets and that Medicare paid the fraudulent claims.

The jury was charged with the elements of the crime of conspiracy to commit health care fraud and their responsibility to judge the credibility of the witnesses. The jury having been so instructed appears to have rejected much of the testimony of the defense witnesses and relied on the credibility of the government's witnesses and based on both direct and sufficient circumstantial evidence reached a guilty verdict. Under Rule 29, reviewing the evidence in the light most favorable to the prosecution, the Court concludes that a rational trier of fact could find the essential elements of conspiracy to commit health care fraud had been proved beyond a reasonable doubt.

Applying Rule 33, the Court finds that the evidence does not preponderate heavily against the verdict and even sitting as a "thirteenth juror" there was sufficient credible evidence to support a verdict of guilty. There was no testimony that refuted Williams' direction of the day to day operations at Haven. No sufficient evidence refuted the testimony of Sharma. No credible testimony refuted

9

the testimony that Williams directed the fraudulent method of completing the progress notes and billing sheets. While no biller testified, circumstantial evidence supports that Williams, the operator of Haven, submitted the progress notes or billing sheets to someone to bill Medicare. Williams was able to argue before the jury that no biller testified and that others could have submitted fraudulent claims to Medicare, yet the jury did not find in her favor. The Court finds that "interests of justice" do not require a new trial as to the conspiracy to commit health care fraud.

### D.  Conspiracy to Pay and Receive Healthcare Kickback

Williams also requests judgment of acquittal under Rule 29 and a new trial under Rule 33 claiming that the only evidence against her regarding the kickback scheme was that checks were given to her or to other employees to cash for her. Williams argues her defense that the money was used for expenses at Haven is un-refuted. Williams notes that only some checks noted "walker" in the notation line and that her witness, Mr. Walker testified that he never received any money from Williams for patients referred to Haven. He did, however, receive money for repairs and the purchase of a van for patient transportation. The government counters that the testimony of Sharma regarding his referral of Williams to co-defendant Abdul Al-Jumail and Ms. Odom's testimony about the agreement

between Williams and co-defendant Abdul Al-Jumail (as well as Odom's own participation in the scheme) support the charge of conspiracy to receive kickbacks.

Subsequent billing of services provided to Haven patients by co-defendant Al-Jumail's home health care companies, Associates in Home Care, Inc. and Swift Home Care LLC, corroborates the testimony of the witnesses against Williams. Even without discrediting Walker's testimony that he received no payment for clients he sent to Haven, a rational jury could find that sufficient credible evidence was presented on each element of conspiracy to receive kickbacks based on payments to Williams and the billing of Haven patients by co-defendant Abdul Al-Jumail's home health care companies. As to the conspiracy to receive health care kickbacks, Williams' motions for judgment of acquittal under Rule 29 and for new trial under Rule 33 are denied.

###    E.    Summary Chart

Williams further requests a new trial because the Court erroneously admitted the Summary Chart, Government's Exhibit 127g. The Court previously ruled that the Summary Chart testified to by Special Agent Fairbanks and Kelly Hartung, an employee of a CMS Medicare contractor, was properly admitted under Fed. R. Evid. 1006. The court incorporates by reference its trial decision that the Summary Chart was properly admitted under the rules of evidence. The jury could properly consider this evidence.

There is no support for Williams' claim that the testimony of the biller was required for the admission of this exhibit. The Summary Chart summarized Hartung's testimony as to the Medicare claims submitted and processed by CMS under Government's Exhibit 120. The interests of justice do not require a new trial under Rule 33 relative to the admission of the Summary Chart.

### F.   Prosecutorial Misconduct

#### 1.   Witness Intimidation

Under Rule 33, Williams' motion for new trial is also denied as to her of prosecutorial misconduct. Williams claims that the prosecutor intimidated witnesses that she intended to call at trial. A separate record was made on Williams' claim that witness Dawn (Singletary) Kirksey, an employee of Haven, was intimidated. *See, In re Dawn Kirksey*, Misc No. 2:14-mc-51139 (E.D. Mich. Sept. 2014). During that proceeding, Kirksey was appointed counsel to protect her Fifth Amendment rights and during the course of the hearing asserted those rights. At the conclusion of the hearing, the Court found Williams had not supported her claim of intimidation. The Court incorporates its ruling on the record at trial here by reference.

In order for a defendant to prevail on a motion for new trial based on prosecutorial misconduct, the conduct must have been "so pronounced and persistent that it permeated the entire atmosphere of the trial" or "so gross as

probably to prejudice the defendant." *United States v. Emuegbunam*, 268 F.3d 377, 404 (6th Cir. 2001)(citation omitted). Even though it would have been better for the prosecution to have proceeded with more caution as to this witness, the actions of the prosecution do not rise to the level of prosecutorial misconduct requiring a new trial in the interest of justice under Rule 33. It must also be noted again that this witness exercised her Fifth Amendment right not to incriminate herself based on the advice of counsel appointed for her.

### 2.    Rule 404(b) Evidence

Williams also claims she is entitled to judgment of acquittal or new trial based on prosecutorial misconduct related to the admission evidence of Rule 404(b) evidence regarding fraud at another facility, TGW Adult Day Care Facility. Odom testified that Williams had instructed her to prepare false notes at that agency. Williams was not charged for that conduct. At trial, the Court found this evidence was properly admissible and that proper instructions were given regarding the use of this evidence. Even if the government had improperly referred to this evidence during closing argument, any prejudice to Williams was cured by the jury instructions given by the Court. Therefore, the Court finds there is no support either under Rule 29 or Rule 33 for acquittal or for a new trial as to the admission of evidence of fraud at TGW.

### III.   CONCLUSION

For the reasons set forth above, Defendant Felicar Williams' Motion for Judgment of Acquittal under Rule 29 and Motion for New Trial under Rule 33 are both, in all respects, DENIED.

Accordingly,

**IT IS ORDERED** that Defendant Felicar Williams' Motion for Judgment of Acquittal **[Docket No. 385, filed October 13, 2014]** is **DENIED.**

**IT IS FURTHER ORDERED** that Defendant Felicar Williams' Motion for New Trial **[Docket No. 388, filed October 15, 2014]** is **DENIED.**


**S/Denise Page Hood**
**Denise Page Hood**
**United States District Judge**

**Dated:  September 24, 2015**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on September 24, 2015, by electronic and/or ordinary mail.**

**S/LaShawn R. Saulsberry**
**Case Manager**

14